IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>vs.<br><br>WILLIAM HARRISON,<br><br>            Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No.  2:07CR53DAK |

This matter is before the court on Defendant William Harrison's Motion to Suppress

statements made to police and evidence acquired as a consequence of those statements.  The

court held an evidentiary hearing on the motion to suppress on September 9, 2008, and closing

arguments on October 21, 2008.  At the hearings, Defendant appeared and was represented by

Joshua M. Bowland.  Plaintiff was represented by John W. Huber.  The court has carefully

considered all pleadings, memoranda, and other materials submitted by the parties as well as the

law and facts relating to these motions.  Now being fully advised, the court renders the following

Memorandum Decision and Order.

## A.  FINDINGS OF FACT

On January 10, 2007, a federal arrest warrant issued for Defendant William Harrison for

three bank robberies.  After receiving information from a confidential informant, officers did a

stake out of a house and saw someone matching Harrison's description come out of the house.

The officers followed the car to a motel about a block away.  The officers watched him go into the motel, where he stayed for a short time and then exited.  The officers called for another officer to make a stop of the vehicle in a marked police car.

The undercover officers approached Harrison as he was getting out of the car.  Harrison said, "You got me.  I just got back in town, I was going to turn myself into police today."  Officer Maldonado spoke to Harrison for a few seconds and stood by him for about half an hour until Harrison was transported to the Public Safety building.  Officer Maldonado testified that Harrison was calm, polite, and cooperative during his interactions with him.

Officer Maldonado did not do the pat down search of Harrison.  He stated, however, that if any drugs or drug paraphernalia had been found during the pat down, the other officer would have told him.  No field sobriety test was given to Harrison at the scene because he was only a passenger in the vehicle and there was no information from the confidential informant about Harrison being involved in drugs.  If anything was seized from Harrison, Maldonado testified that the Salt Lake Police Department's policy is that a report would be made listing the items and put on file with the case.  Special Agent Daniel Patrick with the FBI, who has been involved in this case, testified that nothing in his investigation showed that a pipe was found by the arresting officers.

The arresting officers called Detective Bryan Johnson, who had been investigating the bank robberies for three to six months in connection with the FBI Violent Crimes Task Fore.  Johnson called his partner Daniel Patrick regarding Harrison's arrest and went to Public Safety Building, where Harrison had been transported.  Johnson testified that he met with Harrison in an

2

investigation room about twenty to twenty-five minutes after he received the telephone call.
Johnson introduced himself to Harrison and told him that he would come back in a minute.
Harrison asked for a cigarette, but Johnson did not have one.  Johnson got Harrison a cigarette
later.

When Johnson and Patrick came back to interview Harrison, they gave him a drink and
took off his handcuffs.  The officers were wearing plain clothes and no weapons were displayed.
Johnson read Harrison the FBI *Miranda* warning form and explained that if Harrison wanted an
attorney they would stop talking and he would be booked into jail.  During the conversation,
Johnson told Harrison that if he provided information that would save him time, he would talk to
the United States attorney on the case.  Johnson testified that during the discussion, Harrison
appeared to understand his rights.  Patrick also testified that Harrison listened intently and
nodded appropriately.  Harrison agreed to waive his rights and signed the form.

Johnson testified that he tried to be respectful, honest, and forthright during the interview
because that is the best way to get information.  The officers talked with Harrison for forty-five
to fifty minutes and then took a break.  Johnson took Harrison outside and let him have a
cigarette.  Harrison was not handcuffed.  The officers spoke to Harrison for another hour and
then took another break.

At the end of the interview, Johnson testified that he got more direct and "a little in his
face" because Harrison denied things that he knew Harrison did.  However, Johnson stated that
there was no screaming or pointing.  Patrick told Harrison that they had his DNA and that if they
had to wait for a DNA match, the United States Attorney's office would go for the maximum

punishment.  Johnson also gave Harrison examples of other defendants who had received reasonable sentences because of their cooperation.

Johnson testified that he has had extensive experience with people on drugs and alcohol during his career.  In his interactions with Harrison, however, he stated that there was no indicia of Harrison being on drugs or alcohol.  There was no smell, no slurring, no evidence in his eyes, and he was still and articulate.  Harrison also told Johnson that he had not used crack since he went into a shelter months earlier.  Johnson stated that Harrison's demeanor comported with the fact that Harrison had previously had interactions with police.  Johnson also testified that if he interviews someone who is under the influence, he will make a note of it.

Patrick testified that during the interview, Harrison's eyes looked normal, unlike a picture he had seen of Harrison from July 2006 when Harrison was under the influence.  Patrick also testified that Harrison was coherent and told the officers that he had been "clean" for over a month.

Chris Thomas, a Sandy City Police Officer who was involved in the case because one of the bank robberies occurred in Sandy, spoke to Harrison while a technician was doing DNA testing on Harrison.  Thomas testified that he has a lot of experience in dealing with people under the influence and Harrison did not appear to be under the influence of anything.  Thomas stated that Harrison told him that he was not having a relapse and he was staying with a woman who did not use drugs.  Thomas talked to Harrison for approximately twenty-five minutes, and he found Harrison to be clear thinking, coherent, and lucid.  He stated that Harrison was able to communicate effectively and he understood what was being said to him.

Harrison, himself, testified that crack cocaine no longer had an effect on him.  He stated that no matter how much crack cocaine he smoked, it did not result in a high.

### B.  CONCLUSIONS OF LAW

Plaintiff argues that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights prior to making statements to the officers.  The United States stipulates that Harrison had been arrested and was in custody when officers interviewed him on January 17, 2007.

The law is clear that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).   Post-arrest statements are admissible if the defendant was informed of his rights and knowingly, intelligently, and voluntarily waived them prior to making the statements.  "Only if the 'totality of the circumstances surrounding the investigation' reveal both an uncoerced choice and the requisite level of comprehension may a court conclude that the Miranda rights have been waived."  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

The *Moran* case instructs that to determine whether a waiver was made voluntarily, knowingly, and intelligently, the court must make a two-part inquiry: "First, the relinquishment of the right must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the

decision to abandon it.  *Id.*  at 421 (citations omitted).  The Tenth Circuit has recognized many

factors under the totality of the circumstances analysis, including age, education, intelligence,

physical and mental characteristics, etc.  *See U.S. v. Chalan*, 812 F.2d 1302, 1307 (10th Cir.

1987).  "In no case, however, is any single factor determinative."  *Id.*

   In this case, there is no question that the officers informed Harrison of his rights and

Harrison signed a waiver of rights form.  Harrison, however, first argues that his waiver was not

made voluntarily, knowingly, and intelligently because his will was overborne when the officers

used promises of leniency and threats of punishment.  Prior to Harrison's signing of the waiver

form, Johnson stated that he could talk to the United States attorney on the case on Harrison's

behalf if he cooperated.  But courts have found that "[t]hat type of limited assurance does not

taint ensuing statements as involuntary."  *United States v. Lewis*, 24 F.3d 79, 82 (10th Cir. 1994).

   The form provided to Harrison outlined every right and consequence of waiving those

rights.  The officers testified that Harrison listened intently and nodded appropriately.  While

promises and assurances were made to Harrison during the interview, the court does not find that

they were out of the range of normal police conduct.  The discussion did not rise to the level of

being threatening or coercive.  In addition, there are no signs in the video that Harrison's will

was overborne.

   Furthermore, although much of the evidentiary hearing was focused on whether Harrison

was under the influence of drugs during the interview, the court finds no credible evidence to

suggest that he was.  Each of the officers testified that Harrison was lucid and articulate.

Accordingly, the totality of the evidence demonstrates that Harrison's waiver was voluntarily,

knowingly, and intelligently made.  The court, therefore, concludes that there is no basis for suppressing Harrison's statements to officers.

**CONCLUSION**

Based on the foregoing, Defendant's Motion to Suppress Statements is DENIED.

DATED this 24th day of October, 2008.

BY THE COURT:

DALE A. KIMBALL
United States District Judge